[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Sally Maloney, is a licensed real estate agent or salesperson. In November, 1998, the plaintiff brought suit in two counts claiming breach of contract against two entities, PCRE, L.L.C. d/b/a the Prudential Connecticut Realty (PCRE), and Real Estate Connecticut, Inc. d/b/a the Prudential Connecticut Realty (Prudential), both of which are licensed real estate brokers.
In the first count of her amended complaint dated March 8, 1999, the plaintiff alleges that on January 12, 1994, she entered into a written agreement with Prudential which entitled her to 80% of the commissions received by Prudential as the listing broker on the sale of condominium units at the Waterford, located on Sound Shore Drive in Greenwich. The plaintiff further alleges that she assisted in the sale of twenty-one units and was owed $556,206, of which she had received $310,629, leaving a balance of $245,770. In the second count of the complaint, the plaintiff alleges that in December, 1997, at or about the time that the plaintiff terminated her affiliation with Prudential, the defendant Prudential sold its business to the defendant PCRE, which became liable CT Page 12160 to pay to the plaintiff the commissions based on her contract with its predecessor, Prudential.
In their answer to the complaint, the defendants agreed that the plaintiff, on January 12, 1994, entered into an "Independent Contractor's Agreement" with Prudential, but they deny that the plaintiff was entitled to 80% of the commission split, and they deny any liability to the plaintiff. The defendants also filed five special defenses. The first claims an accord and satisfaction because the parties entered into a new agreement and everything that was due the plaintiff had been paid. In the second special defense, the defendants claim that the plaintiff has "unclean hands" because she directed the developer and owner of the project, BSB Greenwich Mortgage Limited Partnership (B SB), to pay the commissions due the defendants to a third party. The third such defense involves an alleged breach of the duty of good faith and fair dealing. The defendants in their fourth special defense claim that the plaintiff as their agent breached the fiduciary duties she owed to the defendants. In the fifth special defense, the defendants contend that they are entitled to a set-off as authorized by General Statutes § 52-139.
The starting point for the resolution of this case, which was tried to the court, is the January 12, 1994 contract between the plaintiff and Prudential. This agreement provided in pertinent part that the plaintiff, referred to in this agreement as "Independent Contractor," was granted a non-exclusive license to use the name of "The Prudential Connecticut Realty" in her capacity as a real estate sales person. The agreement further provided that the plaintiff's compensation as an agent for Prudential "shall be commissions earned on property sold or listed," and that no commission shall be earned "until such time as the title of the property sold passes from the seller to the buyer, the purchase price has been paid and commissions are received" by Prudential, described therein as the "Broker." The agreement does not mention any specific split of commissions between the independent contractor and the broker, except to indicate that the commissions received by the broker "shall be promptly divided between Broker and Independent Contractor in the proportion to which each is entitled."
There is no dispute that BSB agreed to pay a commission of 5% of the sales price of each unit, 2.5% to the selling broker, and 2.5% to the listing broker, Prudential. On several occasions, the plaintiff acted as selling broker in addition to listing broker and that aspect of the commissions is not the subject of this present action. The plaintiff contends that the 1994 "Independent Contractor Agreement" was subsequently modified by the parties verbally to provide a 50%-50% split of the commissions on the listing side. The plaintiff testified that the reason she agreed to take 30% less was based on an agreement by CT Page 12161 Prudential to spend at least $200,000 on advertising and marketing. The project had not been moving well, and the plaintiff believed that an aggressive advertising campaign was required in order to promote sales of the condominium units. The plaintiff's testimony on this point and all others is found to be credible and logical.
The parties further agree that Prudential did not spend $200,000 on advertising and marketing, but something more in the nature of $80,000, and did not make any such expenditure at all after the summer or early fall of 1996. The plaintiff claims that because the defendant Prudential breached its agreement to pay $200,000 for advertising and marketing, she has the right to revert to the original agreement, and therefore is entitled to 80% of all the commissions on the listing side, rather than a 50%-50% split. The plaintiff claims that the difference between 50% and 80% on seventeen condominium sales is $79,077.[1]
The defendants argue, however, that even if there was a breach of contract on the part of Prudential, which they deny, the plaintiff has not been damaged because all the units in the project were sold. The plaintiff is obliged to prove not only that there was a contract, and that it was breached, but also that she was damaged as a result of this breach. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. Such damages, moreover, are to be determined as of the time of the occurrence of the breach." (Citations omitted; internal quotation marks omitted.) Colby v. Burnham, 31 Conn. App. 707, 721, 627 A.2d 457
(1993).
The plaintiff did sustain damages because she lost 30% of the commissions she would have earned had she not agreed to cut back her share from 80% to 50%. This agreement, however, was made only on the condition that the defendants spend $200,000 on advertising and marketing which they failed to do. "If the condition is not fulfilled, the right to enforce the contract does not come into existence." (Internal quotation marks omitted). Fusaro v. Baisley, 57 Conn. App. 636, 640, 749 A.2d 1205, cert. denied, 254 Conn. 902, 755 A.2d 218 (2000). The defendants appear to argue that the plaintiff voluntarily agreed to decrease her 80% share of the listing broker's commission, which she had been receiving, without receiving any benefit, an interpretation that may speak well for the plaintiff's benevolence, but defies logic in the real estate business.
The defendants failed to prove their special defenses. There was no accord and satisfaction. The plaintiff agreed to modify her original agreement on condition that the defendants spend $200,000 on advertising CT Page 12162 and marketing which they did not do. The plaintiff does not have "unclean hands" nor did she breach the duties of good faith and fair dealing. There was no evidence to the effect that she retained files belonging to the defendants. She performed her side of the bargain as an agent for the listing broker effectively and honestly, and did not breach any fiduciary duty owed to Prudential or PCRE.
The defendants also contend that the plaintiff interfered with their right to obtain commissions from BSB. What the plaintiff did do was obtain an order of garnishment from this court directing BSB to hold the money due the listing broker until the dispute between them could be resolved.
On June 14, 2000, the plaintiff moved to amend her complaint to add a claim for punitive damages, attorney's fees and costs, claiming that the defendants violated General Statutes § 31-72, which concerns the failure of an employer to pay its employee, and provides for double damages if an employee can so prove. As the defendants point out correctly in their objection to the request by the plaintiff, this motion was filed approximately ten months after the trial ended in August, 1999. Granting the plaintiff's motion at this time would be prejudicial to the defendants who tried the case on the theory that the plaintiff was an "independent contractor," as was stated numerous times in the contract she signed with Prudential, and not an employee. Hence, the motion to amend the complaint to add a claim under General Statutes § 31-72 is denied.
The plaintiff also argues that she should be awarded prejudgment interest as authorized by General Statutes § 37-3a for money wrongfully withheld. This request is denied because the defendants have not withheld the money wrongfully. There was a bona fide dispute concerning the refusal of the defendants to spend $200,000 on advertising and marketing and whether that gave rise to any damages. The amount sought was essentially unliquidated in the sense that the exact amount due was unknown and subject to a possible set-off. Moreover, there was no evidence of bad faith or willfulness on the part of the defendants.
Several contracts were signed as a result of the plaintiff's efforts before she terminated her affiliation with Prudential and/or PCRE at the end of December, 1997, but had not closed by the time she left. Reference is to units C-is, D-23 and D-24. The "Independent Contractor's Agreement" provides that in this event: "The broker shall be entitled to retain a reasonable portion of the Independent Contractor's commission to defray costs and expenses attributable to the servicing and closing of the sale after termination." As indicated previously, these three units are subject to a garnishment order from this court dated March 1, 1999, in CT Page 12163 the amount of $250,000, and therefore commissions have not yet been received by the defendants and hence are not yet payable to the plaintiff. There is a dispute about the total amount of commissions due on the sale of these last three units and the claim of a set-off for defraying "costs and expenses," neither of which were the subject of this present action as BSB is not a party to this case. However, it is the decision of this court that whatever the ultimate amount of commission paid to the listing broker, the plaintiff is entitled to 80% thereof for the reasons stated above.
In conclusion, the plaintiff is entitled to recover $79,077 from the defendants at this time and judgment enters in that amount against both defendants. The plaintiff is also entitled to court costs as taxed by the office of the chief clerk.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of October, 2000.
William B. Lewis Judge Trial Referee